IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MAMOUNIS, | ) | CASE NO. 4:05 CV 2880 |
| | ) | |
| Petitioner, | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARC HOUK, Warden, | ) | |
| Ohio State Penitentiary, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

Before me by referral[1] is William Mamounis' *pro se*[2] petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254,[3] as amended.[4]  In November, 2006, Mamounis completed a three-year sentence at the Ohio State Penitentiary imposed upon his conviction on one count of theft from an elderly person.[5]  He is now under supervised release.[6]

---

[1] ECF # 5.

[2] ECF # 14.

[3] ECF # 1.

[4] ECF # 16.  The amendment, which was allowed by the Court in a non-document entry and was not opposed by the State (ECF # 17), asserted no new grounds for relief but added additional elements to the relief sought.  Given the recommended disposition of the petition, any relief sought would be moot, and there is no need to address whether any federal habeas court has the authority to reinstate a lapsed state driver's license or order the destruction of state evidentiary records (see, ECF # 16 at 1-2) as part of granting the writ.

[5] ECF # 1.

[6] Information about Mamounis' current status is contained on the Ohio Department of Rehabilitation and Corrections website, www.drc.state.oh.us.  A petitioner subject to supervised release remains "in custody" for purposes of federal habeas jurisdiction. *See*, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993).

Mamounis contends that this conviction was not supported by sufficient evidence, that it was against the manifest weight of the evidence, that it was the product of an unfair trial, and, insofar as it is imprisonment for debt, that it is unconstitutional.[7]

The State responds that the state appellate court decision finding sufficient evidence for the conviction is not an unreasonable application of clearly established federal law, that any argument concerning the weight of the evidence is non-cognizable here, and that the remaining arguments are procedurally defaulted for not having been first raised in state court.[8]

For the reasons delineated below, I will recommend that this petition be dismissed in part and denied in part.

## II. Facts

### A. Offense and trial

The relevant facts concerning the underlying offense and trial were set forth by the state appellate court as follows:[9]

Mamounis had owned a home remodeling business in the Cleveland area, Affordable Home Remodeling. Due to financial problems with the business, Mamounis was forced to close the company. Mamounis subsequently began working as an estimator for Ohio Window Design

---

[7] ECF # 1 at 6-11.

[8] ECF # 9.

[9] Factual findings made by the state appeals court on its review of the trial record are presumed true in a federal habeas proceeding. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

("OWD"), a company owned by his girlfriend, Sheryl Frost.  On November 10, 2000, the victim, Betty June Yeager ("Yeager'), received a telemarketing call, inquiring whether she was interested in having home remodeling performed by OWD.  Yeager indicated that she may be interested. Mamounis subsequently visited Yeager's home in Girard, Ohio to provide an estimate, after which Yeager entered into a contract with OWD.

In order to finance the repairs, which totaled $16,831, Yeager mortgaged her home with First Mortgage Security for $31,300, which would cover the cost of the remodeling as well as Yeager's other outstanding debts. The monthly payment on the mortgage was $249.  Yeager had no outstanding mortgage on the home prior to this time.  Yeager received $642 per month in social security, which was her only source of income.

The remodeling was complete by Spring 2001.  Mamounis had visited Yeager's home four times while the work was being performed to review the progress.  Mamounis maintained that he, Yeager and Frost became friends during that time, and that Yeager would frequently call the OWD office to speak with them.  Mamounis stated that Yeager had begun referring to him as her son and he called her "mom."  Mamounis would also drop by Yeager's home if he happened to be in the area.  During his visits, Mamounis indicated to Yeager he was experiencing financial and legal problems from the failing of his Cleveland-area business. Yeager then purportedly agreed to take out a second mortgage on her house to help Mamounis out of his legal dilemma.

On August 24, 2001, Yeager signed a second mortgage, witnessed by Frost and Yvette Hunter, the closing agent for Chelsea Title Company.  The second mortgage broker was Matt Huberty of Money Managers Company. The second mortgage was in the amount of $30,412 to cover the cost of Mamounis' debt to his attorney in a Cleveland lawsuit related to Mamounis' previous business.  Yeager's monthly payment was $349 for the second mortgage.  Yeager endorsed the check to OWD, and the check was deposited in an OWD account.  A check was then drafted to Mamounis' Cleveland attorney in the amount of $21,300.  The balance remained in the OWD account.

Three weeks after the closing on the second mortgage, on September 21, 2001, Yeager purportedly agreed to loan money to OWD to cover its operating expenses via her personal Master Card.  Mamounis picked up the card at Yeager's residence and took it to the OWD offices where it was "swiped" for $5,000.  Mamounis returned the card to Yeager.  On October 15,

2001, the credit card was again picked up from Yeager and "swiped" for an additional $2,000, which was deposited into the OWD bank account.

In October 2001, Yeager entered the hospital for surgery.  During this time, Yeager's neighbor and friend, Kathy LaNeve, agreed to look after Yeager's things during her hospital stay.  LaNeve testified that she had begun to realize that Yeager was having increasing memory problems and had been isolated and not particularly social.  Yeager was widowed and had no contact with her son or daughter at that time.  While LaNeve was at Yeager's home, she discovered the paperwork from both mortgages and the MasterCard statement.  Knowing Yeager's monthly income, LaNeve became concerned that Yeager may have become overly encumbered with debt as a result of the mortgages and credit card debt.

Upon her return from the hospital, LaNeve confronted Yeager with the financial issues, at which time Yeager insisted that she owned her home free and clear and that she never authorized any MasterCard charges to OWD, Frost or Mamounis.  In response, LaNeve drafted a letter for Yeager's signature to Key Bank to contest the MasterCard charges, requesting the account be closed.  LaNeve reported the unauthorized credit card use to the Girard City Police and an investigation commenced.  It is unclear whether Mamounis was aware of the pending investigation.  However, on December 17, 2001, shortly after the report on the credit card use, Mamounis and Frost picked up Yeager and took her to the office of Mamounis' attorney, Emor Snyder, where Mamounis signed a cognovit note for $32,800, promising to repay the amount of the second mortgage.

Upon learning of this transaction, LaNeve agreed to file for guardianship over Yeager.  A report from Dr. P. Y. Solanski, Yeager's personal physician, confirmed LaNeve's suspicions regarding Yeager's declining mental state due to dementia.

During the course of the police investigation, Captain Frank Bigowsky attempted to interview Yeager regarding the mortgages and credit card debt but discovered that Yeager was unable to adequately provide clear and logical answers to his inquiries.  Agent Cliff Evans of the Bureau of Criminal Investigations ("BCI"), also concluded that Yeager was unable to answer any questions when he interviewed her.

Despite the execution of the cognovit note by Mamounis, Yeager received two delinquency notices from Fifth Third Bank, the holder of the

second mortgage.  In June 2002, Senior Rights and Advocacy became involved in the Yeager case.  The director of that agency at that time, Sharon Kilpatrick, was appointed by the Trumbull County Probate Court to replace LaNeve as guardian.  LaNeve had been unable to continue as guardian as she was depleting her own personal income attempting to cover Yeager's financial obligations.  Because of the increasing debt and expense, Kilpatrick lacked the financial resources to maintain Yeager's finances and was forced to place her in a nursing home.  Chase Manhattan Mortgage, the holder of the first mortgage, foreclosed on Yeager's home on January 30, 2003.  Yeager was placed in the nursing home under protest and was enrolled in Medicaid to pay the nursing home costs.

At the conclusion of the investigation, a grand jury secretly indicted Mamounis on July 25, 2002.  He was charged with one count of money laundering, a felony of the third degree, and three counts of theft from an elderly person, felonies of the second, third and fourth degrees.  Mamounis pled not guilty to all charges.

The matter proceeded to a bench trial, where the court found Mamounis guilty of one count of theft from an elderly person, a felony of the second degree, and acquitted Mamounis of the remaining charges. After a presentence investigation, Mamounis was sentenced to three years incarceration and ordered to pay restitution in the amount of $20,206. [10]

## B.    Appeal

Mamounis timely appealed his conviction to the Ohio Eleventh District Court of

Appeals.[11]  In his brief, he asserted the following three assignments of error:

1.    The trial court abused its discretion by admitting the transcript of Appellant's grand jury testimony.

2.    The Appellant's conviction for theft from an elderly person is not supported by sufficient evidence.

---

[10] *State v. Mamounis*, No. 2003-T-0163, 2005 WL 1272421, at **1-3 (Ohio App. 11 Dist. May 27, 2005).

[11] ECF # 9 (State record attachment) at 35.

> 3.     The Appellant's conviction is against the manifest weight of the evidence.[12]

The State responded,[13] and Mamounis filed a reply brief.[14]  The state appeals court then found all of Mamounis' alleged assignments of error to be without merit,[15] affirming the judgment of the trial court.[16]

Mamounis thereupon had his appellate attorney appointed to represent him before the Supreme Court of Ohio[17] and, in his memorandum in support of jurisdiction, set forth two propositions of law:

> 1.     A criminal defendant's conviction for theft from an elderly person, pursuant to R.C. 2913.02(A)(3) and (B)(3) is not supported by sufficient evidence where the record reveals that there was no evidence that the victim was deceived.

> 2.     A criminal defendant's conviction for theft from an elderly person, pursuant to R.C. 2913.02(A)(3) and (B)(3) is against the manifest weight of the evidence where there was no evidence that the victim was deceived.[18]

---

[12] *Id.* at 45-71.

[13] *Id.* at 72-98.

[14] *Id.* at 99-106.

[15] *Id.* at 107-121; *Mamounis*, 2005 WL 1272421.

[16] *Id.* at 122.

[17] *Id.* at 125.

[18] *Id.* at 130.

-6-

The State filed a memorandum in opposition.[19]  On October 5, 2005, the Ohio Supreme Court denied leave to appeal, dismissing the appeal as not involving a substantial constitutional question.[20]

## C.     Motion for judicial release

While Mamounis was pursuing his appeal to the Ohio Supreme Court, he filed a motion with the state trial court seeking release from prison and a modification of his sentence so that he could return home under electronically-monitored house arrest to care for his wheelchair-bound wife.[21]  The State filed a response[22] and, after a hearing, the motion was denied.[23]

## D.     Federal habeas

On December 15, 2005, Mamounis, *pro se*, filed this petition for a writ of habeas corpus, raising the following four grounds for relief:

1.     Petitioner's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence, which resulted in a violation of his right to Due Process of Law, as guaranteed by the United States Constitution.

2.     Petitioner's conviction was not supported by sufficient evidence as was against the manifest weight of the evidence, which resulted in a

---

[19] *Id.* at 163-178.

[20] *Id.* at 179.

[21] *Id.* at 180-83.

[22] *Id.* at 184-92.

[23] *Id.* at 210.

-7-

violation of his right to Equal Protection of the Law, as guaranteed by the Constitution of the United States.

3.      Petitioner's trial was unfair, which caused a violation of his rights to Due Process and Equal Protection of Law, as guaranteed by the Constitution of the United States.

4.      Petitioner's imprisonment for debt is in direct violation of the Constitution of the United States of America.[24]

As previously noted, the State filed a return of the writ,[25] arguing first that Mamounis' claims in the first three grounds concerning a lack of sufficiency of the evidence are without merit, since the decision of the state appeals court in this regard was not an unreasonable application of the clearly established federal law of *Jackson v.Virginia*.[26]  In addition, the State maintains that Mamounis' claims in grounds one and two that his conviction was against the manifest weight of the evidence are not cognizable in a federal habeas court.[27] Finally, the State asserts that any argument concerning a denial of equal protection – as distinct from arguments based on due process – is procedurally defaulted for never having been fairly presented to Ohio courts.[28]

---

[24] ECF # 1 at 6-11.

[25] ECF # 9.

[26] *Id.* at 12.

[27] *Id.* at 13.

[28] *Id.* at 13-14.

Mamounis filed a traverse,[29] contending that, in his view, 28 U.S.C. § 2254(D)(6) "seems to cover manifest weight" claims, since the material facts of his case were not adequately developed at trial.[30]  In addition, he posits that the state record is not entitled to the presumption of correctness for the same reason.[31]  Finally, he argues that "it is obvious that the trier of facts was not rational and the elements of the crime were never proven beyond a reasonable doubt," because the trial judge "use[d] many inferences to arrive at his conclusions which is prohibited by Evidentiary Rule."[32]

Mamounis also restates his claim that "the debt between Yeager and the Petitioner [was] lawful and all actions before police involvement in this case were acceptable to the parties."[33] As a result of "LaNeve ma[king] a problem where there was none[,]" Mamounis contends that he was "incarcerat[ed] for what was proven at trial to be a legal and binding debt, in direct violation of the Constitution of the United States."[34]

---

[29] ECF # 15.

[30] *Id.* at 3-4.

[31] *Id.* at 5.

[32] *Id.* at 6.

[33] *Id.* at 12.

[34] *Id.*

# III.   Analysis

**A.    All claims asserting that the conviction here was against the manifest weight of the evidence are not cognizable in a federal habeas proceeding.**

Mamounis asserts in Grounds One and Two that his conviction was both not supported by sufficient evidence and against the manifest weight of the evidence resulting in purported violations of his Due Process (Ground One) and Equal Protection (Ground Two) rights. Insofar as both these grounds maintain that Mamounis' conviction was against the manifest weight of the evidence, they state a claim founded solely on state law which cannot be addressed by a federal habeas court.

The distinction between federal habeas claims resting on an assertion of insufficient evidence, which are cognizable here, and those based on the contention that a conviction was against the weight of the evidence, which are not, was clearly summarized by the district court in *Echols v. Houk*[35] as follows:

> In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law which may not be resolved by the reviewing court through weighing the evidence.  In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses.[36]

---

[35] *Echols v. Houk*, No. C-1-03-66, 2005 WL 1745475 (S.D. Ohio July 25, 2005).

[36] *Id.*, at *3 (citations omitted).

The acts of weighing evidence and determining the credibility of witnesses – both inherent in the process of determining whether a conviction is against the manifest weight of the evidence – are expressly forbidden to a federal habeas court,[37] which does not function as an additional state court of appeals.[38]  Accordingly, as was stated by the Court in *Echols*, a claim by a federal habeas petitioner that a conviction was against the manifest weight of the evidence "does not implicate constitutional concerns, but, instead, only raises an issue of state law that is not cognizable in this federal habeas corpus action."[39]

I, therefore, recommend that Mamounis' claims in Grounds One and Two that his conviction was against the manifest weight of the evidence be dismissed as non-cognizable.

**B.     The claim in Ground Three that the trial was "unfair" and in Ground Four that Mamounis has been unconstitutionally imprisoned for debt should both be dismissed as waived since neither claim was fairly presented to Ohio courts on direct appeal and no further state remedies are available.**

*1.     Standard of review – exhaustion and "fair presentment"*

State prisoners seeking the writ must first exhaust remedies available in state court before seeking federal habeas relief by fairly presenting their federal claims through one full round of the state courts.[40]  Normally, this means that a petitioner must have presented his federal claims to the highest court in the state where he was convicted, thus giving the state

---

[37] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).

[38] *See*, *Reese v. Cardwell*, 410 F.2d 1125, 1126 (6th Cir. 1969).

[39] *Echols*, 2005 WL 1745475, at *3.

[40] *O'Sullivan v. Boerkel*, 526 U.S. 838, 842 (1999).

one full round of its established review procedure before relief is sought in federal court.[41]

The petitioner bears the burden of proving that he has complied with this requirement.[42]

The Sixth Circuit has identified four actions a petitioner can take to "fairly present" his federal claims in state court:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance on state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts that are well within the mainstream of constitutional law.[43]

General allegations that a petitioner was denied a "fair trial" or "due process," without more, do not fairly present claims that a specific constitutional right was violated.[44] "To escape procedural default, [such claims] must themselves be fairly presented, rather than functioning as catchall language within the presentation of other non-constitutional arguments."[45]

If a prisoner failed to present his federal claims to state courts and he is now barred from pursuing relief in those courts, those claims should not be dismissed for lack of exhaustion, since there are no further remedies available to exhaust.[46]  Rather, absent a

---

[41] *Id.* at 845; *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[42] *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

[43] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

[44] *Id.*

[45] *Id.*

[46] *Rust*, 17 F.3d at 160.

-12-

showing of cause and prejudice or actual innocence, they must be dismissed as waived or procedurally defaulted.[47]

In the end, "Federal courts lack jurisdiction to consider a habeas claim that was not fairly presented to the state courts."[48]

## 2. *Grounds Three and Four were never presented to the Ohio courts on direct appeal.*

On direct appeal, Mamounis initially raised only three arguments to the state appeals court: (1) that the trial court abused its discretion by admitting a transcript of Mamounis' grand jury testimony; (2) that his conviction was not supported by sufficient evidence; and (3) that his conviction was against the manifest weight of the evidence.[49] In his attempt to file an appeal with the Ohio Supreme Court, Mamounis reduced his arguments to just two: (1) that his conviction was not supported by the sufficient evidence and (2) that the conviction was against the manifest weight of the evidence.[50]

As a review of the state record plainly shows, Mamounis has never raised to any Ohio court his habeas arguments that his trial was "unfair" [Ground Three] or that his sentence is an unconstitutional imprisonment for debt [Ground Four]. Moreover, to the extent that the claim of "unfairness" in Ground Three is simply a general restatement of the claims that Mamounis' conviction is not supported by sufficient evidence or is against the manifest

---

[47] *Deitz*, 391 F.3d at 808.

[48] *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

[49] ECF # 9 (state record attachment) at 45-71.

[50] *Id.* at 130.

weight of the evidence, those claims are directly made in Grounds One and Two of this petition.

**3.      *Grounds Three and Four should be dismissed as waived.***

As noted, Grounds Three and Four have never been fairly presented to Ohio courts. Moreover, the time for asserting them for the first time in an Ohio appeal has long expired.[51] As such, since Mamounis has failed to present these claims in state court, and there are now no further state remedies available to him, those claims must be dismissed, unless the failure to present them while remedies were available is excused by a showing of cause and prejudice or actual innocence.

Here, Mamounis has made no showing as to why he did not raise these claims before the Ohio courts while Ohio remedies were available.  Nor has he put forth new and reliable evidence of innocence, not available at trial, to establish that it is more likely than not that no juror would have found him guilt beyond a reasonable doubt.[52]

Accordingly, I recommend finding that Mamounis (1) never fairly presented the claims in Grounds Three and Four to Ohio courts while remedies were available; (2) such claims are now waived; and (3) Mamounis has not excused that waiver by a showing of cause and prejudice or actual innocence.  Thus, I further recommend finding that these claims may not be considered by this Court but must be dismissed.

---

[51] *See*, Ohio Rev. Code § 2953.21(A)(2) and (4).

[52] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

-14-

**C.**     **Mamounis' claims in Grounds One and Two that his conviction for theft from an elderly person was not supported by sufficient evidence were rejected by the state appeals court and that decision was not an unreasonable application of clearly established federal law.**

*1.*     ***Standard of review – unreasonable application of clearly established federal law***

Under the standard established by statute, where a state court has ruled on a constitutional claim, a petitioner is not entitled to federal habeas relief unless (1) that ruling was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court.[53]

Where, as here, the state court identified the correct governing legal principle from the decisions of the United States Supreme Court applicable to the petitioner's claim, the writ may not issue unless the state court unreasonably applied that controlling legal principle to the facts of the petitioner's case.[54]  The federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."[55]  The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree

---

[53] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

[54] *Id.* at 401-08.

[55] *Id.* at 411.

that the state court's application was unreasonable.[56] Moreover, the writ may issue only if the state decision was an objectively unreasonable application of federal law as stated in the holdings, not the dicta, of the Supreme Court's decisions at the time of the state court decision.[57]

**2.      Standard of review – sufficiency of the evidence**

The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt."[58] In that regard, the Supreme Court has held that sufficient evidence exists to support a conviction if, after viewing the evidence (and the inferences that may be drawn therefrom) in the light most favorable to the prosecution, the reviewing court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[59] Ohio has expressly recognized this federal standard and incorporated it into Ohio law.[60]

As previously noted, this standard does not permit the reviewing court to make its own subjective determination of guilt or innocence; rather, it gives full responsibility to a trier of

---

[56] *Id.* at 409-10.

[57] *Id.* at 412.

[58] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[59] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[60] *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

-16-

fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.[61]

3.      *The state appellate court decision rejecting Mamounis' claim of insufficient evidence was not an unreasonable application of the clearly established federal law concerning the sufficiency of the evidence.*

The state appeals court initially noted that sufficiency of the evidence claims are governed by the federal standard of *Jackson*, as incorporated in Ohio by *Jenks*.[62]  Thus, the state court here correctly identified the controlling legal principle from a decision of the United States Supreme Court applicable to Mamounis' claim.  The review here, therefore, is whether the decision by the state appellate court to deny Mamounis' claim is an unreasonable application of that law.

The state decision then continued with the elements of the offense of theft from an elderly person, as set forth in relevant portions of § 2913.02 of the Ohio Revised Code:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following:
>
> ***
> (3) By deception;
> (B)(1) Whoever violates this section is guilty of theft.
>
> ***

---

[61] *Herrera*, 506 U.S. at 401-02; *McKenzie*, 326 F.3d at 727.

[62] *Mamounis*, 2005 WL 1272421, at *5.

-17-

(3) Except as otherwise provided in division (B)(4), (5), or (6) of this section, if the victim of the offense is an elderly person or a disabled adult, a violation of this section is theft from an elderly person or disabled adult[.][63]

The state court then set forth the elements of "deception" as it is defined in Ohio

Revised Code § 2913.01(A):

"Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms or perpetuates a false impression in another, including a false impression as to law, value or state of mind, or other objective or subjective fact.[64]

In his state appeal, as well as here, Mamounis asserts that there was insufficient

evidence to support a finding that he deceived the victim, Betty Yeager.[65]  Essentially, he

contends that because he had no reason to steal from Betty Yeager, there was no proof that

he acted "with a purpose to deprive" Yeager of her funds – as required in the elements of the

offense.[66]  Mamounis argues that Yeager offered him a loan, which he accepted, thus he had

no reason to take money from Yeager and there can be no theft by deception.[67]

_____

[63] *Id.*

[64] *Id.*

[65] *See*, ECF # 1 at 19-20 ("The trial judge is wrong in concluding defendant took advantage of Mrs. Yeager.  Like the prosecution[,] he has misinterpreted an act of friendship and kindness for something that is unlawful.  Betty Yeager or anyone else was never deceived by defendant."); *see also*, ECF # 15 at 6 ("[E]vidence [at trial] proved no deception by petitioner and no theft was committed by petitioner.").

[66] ECF # 15 at 7.

[67] *Id.* ("No 'Deception' needed to take place because the loan was offered to [me]. The petitioner had no reason to commit a 'Theft' because Yeager offered to loan him the money.  Everything *** that was offered by the prosecution to prove a theft was committed,

The appeals court, however, found that the trial court had established all the elements of the crime of theft from an elderly person.  Specifically, as to the element of deception, it initially quoted from the conclusions of the trial court as follows:

> This Court concludes that Defendant took advantage of Mrs. Yeager and deceived her by the promise of agreeing to repay the second mortgage.  From the evidence presented and his own testimony before the Grand Jury, it is not credible to believe that he believed that it would be possible for him to repay the mortgage on Mrs. Yeager's real estate.[68]

The appellate court then examined the specific factual support for the conclusion that Mamounis had deceived Mrs. Yeager into taking the second mortgage on her home for his benefit, *i.e.*, to cover his legal fees from his earlier legal difficulties:

> The second mortgage was obtained on August 24, 2001.  At that time, Mamounis was aware of Yeager's monthly social security income, totaling $642 per month.  He was aware that, only eight months previously, Yeager had taken out the initial mortgage on her home to finance the home remodeling.  That initial mortgage payment was $249 per month, an amount representing a large amount of Yeager's monthly income.  A second mortgage would leave Yeager with little, if any, remaining income with which she could meet her other basic expenses.
>
> Mamounis testified to the grand jury that he intended to repay the second mortgage himself.  However, he took means to formalize that intention only after the police investigation commenced, when he and Frost picked up Yeager and took her to his attorney's office to execute a cognovit note.  In reality, Yeager began receiving delinquent notices on the second mortgage as Mamounis was not paying it, leaving Yeager in dire financial straits.  Mamounis' deception is further revealed through the testimony of Matt Hubert, the mortgage broker for the second mortgage.  Hubert testified that he was given inflated figures for Yeager's monthly income and the appraised value of her home, both of which the trial court noted in its judgment entry.

---

proved to be a fabrication.")

[68] *Mamounis*, 2005 WL 1272421, at *6.

The record also demonstrates that Yeager's personal physician recognized that her mental state was deteriorating as a result of dementia. Moreover, Yeager could not participate in the investigation of the charges against Mamounis due to her inability to respond to any questions presented to her just a short time after her last "loan" to Mamounis – evidence of Yeager's deteriorating mental capacity.

Therefore, after viewing the evidence in the light most favorable to the prosecution, we conclude that the trial court could have found the elements of the crime proven beyond a reasonable doubt.  Thus, Mamounis' conviction of theft from an elderly person is supported by sufficient evidence.[69]

A review of Mamounis' arguments here reveals that he essentially seeks to have this Court re-weigh the evidence and re-assess the credibility of the witnesses – actions that are, as noted, expressly forbidden to a habeas court.  No doubt, if Mamounis' account and not the prosecutions was judged most credible, as Mamounis argues here, there was evidence from which a factfinder might have concluded that the transaction here was a "loan."[70]  No doubt, if Mamounis' attacks on the credibility of the medical diagnosis of dementia were believed instead of discounted, as Mamounis argues here, there may have been a basis for concluding that Mrs. Yeager was not operating at diminished mental capacity at the time of these transactions.[71]  And no doubt, if Mamounis' accounts of his own sincerity in making the promise to repay Betty Yeager's second mortgage were accepted as true instead of rejected

---

[69] *Id.*

[70] ECF # 1 at 19-20.

[71] *Id.* at 18-19.

as not credible, as Mamounis contends here, there would be some difficulty in concluding that a theft had occurred.[72]

The trial record contains evidence, recounted above by the appeals court, that, if believed, is more than adequate to support Mamounis' conviction. Mamounis' attempt to now retry this case *de novo* to a federal habeas court, to have this Court choose to credit his accounts over the prosecution's, is directly contrary to the mandate that all the evidence and reasonable inferences are to be construed in favor of the state.  It does not establish that the state appeals court was unreasonable in its application of clearly established federal law concerning the sufficiency of the evidence at trial.

Accordingly, I recommend finding that the state appellate court's denial of Mamounis' claims in Grounds One and Two that his conviction was not supported by sufficient evidence was not an unreasonable application of clearly established federal law. His petition in these respects should, therefore, be denied.

## IV.  Conclusion

For the foregoing reasons, I recommend that William Mamounis' petition for a writ of habeas corpus should be dismissed in part and denied in part.

Dated:   October 30, 2007                            s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge

---

[72] *Id.* at 20.

-21-

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[73]

---

[73] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).